IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SCOTT NEIL,<br><br>　　　　　　Plaintiff,<br>v.<br><br>UNION PACIFIC RAILROAD COMPANY; TTX COMPANY; and TRINITY INDUSTRY LEASING COMPANY,<br><br>　　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Case No. 2:23-CV-00366-JNP-JCB<br><br>Chief District Judge Jill N. Parrish |

Defendant Trinity Industry Leasing Company ("Trinity") filed a motion to dismiss for lack of personal jurisdiction. For the following reasons, the court grants the motion and dismisses Plaintiff Scott Neil's claims against Trinity.

## BACKGROUND

The complaint alleges Mr. Neil, a resident of New Mexico, worked with autorack railcars in Roper Yard in Salt Lake County, Utah. ECF No. 75. On the night and morning before February 22, 2022, it had been snowing, causing ice to accumulate on the railcar handles. Railcar handles are typically coated with grip tape to keep workers safe, but the complaint alleges that on that night, the railcar handle that Mr. Neil was using did not have sufficient grip. Consequently, Mr. Neil slipped and fell between 15 and 20 feet, sustaining injuries.

Mr. Neil subsequently filed suit. On April 24, 2025, Mr. Neil filed his Fourth Amended Complaint, alleging negligence and gross negligence. *Id.* Among the listed defendants was Trinity, a limited liability company with headquarters in Texas. The complaint alleges that Trinity owned, leased, managed, and maintained the railcar relevant to the case, though it alleges that other Defendants also controlled, managed, and maintained the railcar.

On June 27, 2025, Trinity moved to dismiss the claims against it based on lack of personal jurisdiction. ECF No. 83. It attached to its motion a signed declaration from J. Travis Galt, Vice President, Contract Administration of Trinity. ECF No. 83-1. Mr. Neil opposes the motion. ECF No. 96.

## LEGAL STANDARD

The Fourteenth Amendment's Due Process Clause limits a court's ability to exercise jurisdiction over a defendant. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). Whether a court may exercise personal jurisdiction over a defendant depends on the defendant's relationship with the forum state. *See Bristol-Meyers Squibb Co. v. Superior Ct. of Calif.*, 582 U.S. 255, 261–262 (2017). "The Plaintiff bears the burden of establishing personal jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citation omitted).

In considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "[a] district court has discretion to resolve such a motion in a variety of ways—including by reference to the complaint and affidavits, a pre-trial evidentiary hearing, or sometimes at trial itself." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008). If the court does not hold an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *OMI Holdings*, 149 F.3d at 1091. "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.*

The court must accept the factual allegations of the complaint as true but only "to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor[.]" *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988) (quoting *Behagen v. Amateur Basketball Ass'n of the U.S.*,

744 F.2d 731, 733 (10th Cir. 1984), *cert. denied*, 471 U.S. 1010 (1985)); *see Great Bowery v. Best Little Sites*, 609 F. Supp. 3d 1240, 1246 (D. Utah 2022) ("The court must resolve all factual disputes in favor of the plaintiff regarding that prima facie showing and must treat well-pled . . . factual allegations in the complaint as true, unless they are disputed by a declaration.").

## ANALYSIS

Utah's long-arm statute extends "jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment . . . ." Utah Code Ann. § 78B-3-201(3). The court's personal jurisdiction analysis is thus a single inquiry under the due process clause. *See Miller v. Cleara, LLC*, 743 F. Supp. 3d 1357, 1364 (D. Utah 2024). "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014). (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"Personal jurisdiction can be acquired through either general jurisdiction or specific jurisdiction." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020). For corporations, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citation omitted). Otherwise, for there to be general personal jurisdiction, the defendant corporation's contacts with the forum state must be "so 'continuous and systematic' as to render [it] essentially at home in the forum [s]tate." *Daimler*, 571 U.S. at 127 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

The "constitutional touchstone" for specific jurisdiction is "whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co.*, 326 U.S. at 316). Minimum contacts, in turn, means that "(1) the out-of-state defendant 'purposefully directed' its activities at residents of the forum [s]tate, and (2) the plaintiff's injuries 'arise out of or relate to those activities.'" *Fluent LLC*, 955 F.3d at 840 (quoting *Burger King*, 471 U.S. at 472). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co.*, 592 U.S. at 359 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). In other words, the court considers "whether the defendant has such minimum contacts with the forum state 'that he should reasonably anticipate being haled into court there.'" *OMI Holdings*, 149 F.3d at 1091 (quoting *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1979)).

Mr. Neil alleges that there is both general jurisdiction and specific jurisdiction over Trinity. ECF No. 96. The sole basis for his contention is one allegation in the complaint: that "[u]pon information and belief, Defendant Trinity Industry Leasing Company owns, leases, manages, and maintains the auto track rail car at issue." ECF No. 75 ¶ 15. The complaint does not allege that Trinity has any other contacts, claim-related or otherwise, with Utah.

Trinity disputes part of this allegation, attaching a signed declaration to its motion to dismiss. As described in the declaration, Trinity is incorporated in Delaware and has its principal place of business in Texas. ECF No. 83-1 ¶ 4. The company is not registered to do business in Utah, does not have a physical presence in Utah, pays no taxes in Utah, does not market itself to Utah, and had no customers with an autorack railcar with a Utah address as of February 22, 2022. *See id.* ¶¶ 5–10. The declaration asserts that Trinity owned and leased the relevant railcar to Ferrocarril Mexicano, S.A. de C.V. ("FXE"), a Mexican company located in Mexico City, Mexico. *Id.* ¶ 13. The lease agreement was negotiated and executed with FXE in Trinity's Texas headquarters. *Id.* ¶ 14. The railcar was delivered to FXE in Texas, and as the declaration asserts,

4

Trinity does not control the location or use of the railcars once delivered. *Id.* ¶¶ 16–18. It also did not perform any maintenance or repairs on the relevant railcar. *Id.* ¶ 19. Accordingly, while Mr. Neil's allegation that Trinity owns and leases the rail car is uncontroverted and thus accepted as true at this stage, it appears the allegation that Trinity manages and maintains the railcar is disputed. Because Mr. Neil has not responded to Trinity's declaration with his own affidavits or evidence, relying instead only on the allegations in his complaint, the court need not resolve that dispute in Plaintiff's favor. *See Rambo*, 839 F.2d at 1417; *Clements v. Tomball Ford, Inc.*, 812 F. Supp. 202, 205 (D. Utah 1993) ("Where a defendant has specifically rebutted a complaint's jurisdictional allegations by affidavit, plaintiff cannot rely on those allegations, but must submit his own affidavits, depositions etc.").

In his response to the motion to dismiss, Mr. Neil instead asserts that Trinity's ownership and leasing of the railcar are alone sufficient to support the exercise of personal jurisdiction. ECF No. 96 at 3. He specifically argues that Trinity's leasing model, which deals with railcars that travel interstate, foreseeably results in contacts with other states like Utah. *Id.* at 3, 6, 8. He cites to *Ford Motor Co. v. Montana Eight Judicial Dis. Court*, 592 U.S. 351 (2021), for the proposition that "where a defendant's product is purposefully placed into the stream of commerce and causes injury in the forum state," personal jurisdiction may be proper. *Id.* at 8.

The court finds that Trinity's ownership and lease agreement with FXE are not sufficient for the court to exercise general or specific personal jurisdiction over Trinity. With respect to general personal jurisdiction, Trinity is not incorporated in Utah, does not have its principal place of business in Utah, and has no other contacts in Utah that would suggest it to be "at home" in the state.

There is also no basis to suggest, considering both Mr. Neil's complaint and the declaration attached by Trinity, that Trinity purposefully directed its activities at Utah in a manner that supports specific personal jurisdiction. Trinity had no control over its only claim-related contact to Utah—its railcar being in Utah. After Trinity delivered the railcar to FXE in Texas, control over the railcar, including its use and location, passed over to other entities. *See Fluent LLC*, 955 F.3d at 843 (finding that six Justices in *J. McIntyre Machinery, Ltd. v. Nicastro* "emphasized that personal jurisdiction did not exist simply because of a defendant's awareness that its products could, through the stream of commerce, end up in the forum [s]tate"); *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1226 (10th Cir. 2021) (stating that the purposeful direction requirement of personal jurisdiction "ensures that a nonresident is not forced to defend suit in a jurisdiction based on 'random, fortuitous, or attenuated contacts, or of the unilateral activity of another.'" (quoting *Burger King*, 471 U.S. at 475)).

Furthermore, and as Trinity argues, *Ford* does not support Mr. Neil's assertion that the court may exercise personal jurisdiction here. In that case, Ford had "systematically served" a market for the very vehicles that caused injury in the forum states, leading to a strong relationship between the defendant, the forum, and the litigation to justify specific personal jurisdiction. *Ford Motor Co.*, 592 U.S. at 365. Here, there is no allegation in the complaint to support the idea that Trinity systematically served Utah. Rather, the opposite appears to be true, based on Trinity's unrefuted declaration. *See* ECF No. 83-1.

## CONCLUSION AND ORDER

For the above reasons, the court GRANTS Trinity's motion to dismiss the claims against it for lack of personal jurisdiction.

6

Signed March 6, 2026

BY THE COURT

_____
Jill N. Parrish
United States Chief District Judge